1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9   STEWART MANAGO,                        CASE NO. 1:11-cv-01269-SMS PC

10                    Plaintiff,           FIRST SCREENING ORDER DISMISSING
                                           COMPLAINT WITH LEAVE TO AMEND
11       v.                                and DISMISSING PLAINTIFF'S MOTION FOR
                                           STATUS REPORT AS MOOT
12   GONZALEZ, et al.,
                                           (Docs. 1, 28)
13                    Defendants.
                                           THIRTY-DAY DEADLINE
14   _____/

15   **I.       FIRST SCREENING ORDER**

16           Plaintiff, Stewart Mango, ("Plaintiff") is a state prisoner who is currently proceeding pro

17   se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed

18   his Complaint in this action ("Complaint #1") on August 1, 2011.  (Doc. 1.)  Initially, Plaintiff's

19   application to proceed in forma pauperis was granted.  (Docs. 2, 4, 6, 7.)  Subsequently, his in

20   forma pauperis status was revoked and the case was eventually dismissed without prejudice for

21   Plaintiff's failure to pay the filing fee in full and judgment was entered.  (Docs. 9, 12, 13.)

22   Plaintiff filed an appeal on February 27, 2012.  (Doc. 14.)  Remand was requested and granted

23   per Federal Rule of Appellate Procedure 12.1.  (Doc. 18, 22.)  Prior to remand, on March 30,

24   2012, Plaintiff filed a new complaint ("Complaint #2) which was opened under case number

25   1:12-cv-00488-DLB which was consolidated with this action on September 6, 2012 on the

26   conclusion that they involved a common question of law and fact.  (Doc. 26)

27   / / /

28

A.      **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal. . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  Since this action has been consolidated, both Complaints #1 and #2 are subject to screening.

B.      **Summary of Plaintiff's Complaints**

In Complaint #1, Plaintiff names defendants from Kern County, Sacramento County, and Pelican Bay State Prison.  Specifically, Plaintiff names the following Defendants who "are believed to be residents of Kern County, California:" F. Gonzalez, Former Warden; M.D. Stainer, Chief Deputy Warden; K. Holland, Chief Deputy Warden; T. Steadman, Associate Warden; M. Bryant, Facility Captain; J. Gutierrez, Correctional Captain; M. Dunlop, Correctional Lieutenant; J. Gentry, Former Lieutenant; Contreras, Sergeant; J. Tyree, Sergeant; K. Sigston, Facility Sergeant; J. Franco, Program Sergeant; A. Smith, Sergeant; K. Soto, Sergeant; K. Sampton, Appeals Coordinator; E. Stelfer, Correctional Counselor; T. Turmezei, Officer; Adame, Officer; W. Gutierrez, Officer; and A. Cantu.  Plaintiff names the following as Defendants who "are believed to be residents of Sacramento County, California:" M. Buechner, Special Agent; D. Jakabosky, Special Agent; W. Webb, CSR Staff; B. Powell, CSR Staff; A. Ortiz, Sergeant; and Inmate R. Harris (CDCR No. J-82216).  Plaintiff also names Correctional Officer S. Burris from Pelican Bay State Prison as a defendant in this action.

In Complaint #1, Plaintiff generally alleges that he filed an action back in 2008 which resulted in the termination of correctional officer, Mary Brockett, because of Plaintiff's "criminal complaints" that she subjected him to sexual harassment and sexual assault which were investigated, found to be meritorious, and resulted in her termination.  Plaintiff alleges that the

named defendants confiscated, read, and disseminated his privileged legal communications from that action; that he was subjected to a retaliatory transfer to California Correctional Institution; and that he was wrongly validated as a Black Gorilla Family (prison gang) member when he has been a life long Project Wats Crips (street gang) member.  These two gangs are known enemies of each other within the California prison system.  Plaintiff delineates the following ten causes of action: (1) for violation of his rights under the First Amendment to engage in jail-house lawyer activities; (2) for violation of his right to freedom of association under the First Amendment; (3) for violation of his rights to free speech and freedom of association under the First Amendment; (4) for violation of his rights under the First Amendment to be free from retaliation; (5) for violation of his right to associate with members of his own racial group under the First Amendment and the Equal Protection Clause; (6) for violation of his rights to not be subjected to cruel and unusual punishment, deliberate indifference, and the risk of retaliation and retribution; (7) for violation of his rights to not be subjected to cruel and unusual punishment based on false classification and placement in the secured housing unit ("SHU") based on corruption and retaliation; (8) for violation of his rights to not be subjected to cruel and unusual punishment by being "illegally" housed in management cell in retaliation for legitimate jail-house lawyer activities; (9) for unconstitutional conspiracy activities; and (10) for failure to lawfully administer and supervise.

In Complaint #2 Plaintiff names the same Defendants as he named in Complaint #1.

In Complaint #2, Plaintiff again generally alleges that he filed an action back in 2008 which resulted in the termination of correctional officer, Mary Brockett, because of Plaintiff's "criminal complaints" that she subjected him to sexual harassment and sexual assault which were investigated, found to be meritorious, and resulted in her termination.  Plaintiff alleges that the named defendants confiscated, read, and disseminated his privileged legal communications from that action; that he was subjected to a retaliatory transfer to California Correctional Institution; and that he was wrongly validated as a Black Gorilla Family (prison gang) member when he has been a life long Project Wats Crips (street gang) member.  These two gangs are known enemies of each other within the California prison system.  Plaintiff delineates the following four causes

of action: (1) protection from violence by other staff and inmates within C.D.C.R.; (2) retaliation

and retribution; (3) malicious misclassification, segregation, deliberate indifference to risk of

retaliation; and (4) failure to train and supervise/supervisory liability.

Plaintiff only seeks monetary damages in both Complaints #1 and #2.  It is noteworthy

that, while he does not seek injunctive relief (i.e. removal of erroneous prison gang validation

from his C-File), Plaintiff has filed a motion for preliminary injunction requesting just that.

(Doc. 20.)  However, as is also addressed in the concurrently issued order on that motion,

Plaintiff has not identified whether any Defendant he has named in either Complaint #1 and/or

#2 has the authority to correct and error in his C-File.  Without such person being named and

identified as knowing of and failing to correct the error so as to amount to a constitutional

violation, such relief cannot be granted.  Further, the erroneous validation as a member of a

prison gang which is a know enemy gang of that to which Plaintiff belongs is the basis for his

showing of imminent danger upon which his IFP status was allowed.  (Doc. 24.)  Without a

cognizable claim addressing this specific issue, Plaintiff's IFP status may be revoked.  *See* 28

U.S.C. 1915(g).

Plaintiff may be able to amend to correct the deficiencies in his pleadings.  Thus, he is

being given the applicable standards based on his stated claims and leave to file a first amended

complaint in this action.

**C.     Pleading Requirements**

**1.  Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

exceptions," none of which applies to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534

U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R.

Civ. Pro. 8(a).  "Such a statement must simply give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.

However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."

Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights

complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) *quoting* Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 678, *quoting* Twombly, 550 U.S. at 555. While factual allegations are accepted as true, legal conclusion are not. Iqbal. at 678; *see also* Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009); Twombly, 550 U.S. at 556-557. While "plaintiffs [now] face a higher burden of pleadings facts . . ," Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). However, courts are not required to indulge unwarranted inferences. Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If he files a first amended complaint, Plaintiff should endeavor to make it as concise as possible. He should merely state which of his constitutional rights he feels were violated, by which Defendant(s), and the factual basis. Complaints #1 and #2 both present narratives of events followed by delineated claims for relief which re-allege and incorporate by reference all prior paragraphs such that there is no reference to any specific fact(s) upon which Plaintiff's claims are based. This format makes it extremely difficult, indeed impossible in some instances, for the Court to ascertain which facts Plaintiff feels support any of his multiple claims for relief. It is Plaintiff's duty to state cognizable claims for relief as the Court cannot speculate as to which facts Plaintiff believes may or may not support a violation of his constitutional rights that may be brought in a Section 1983 action.

An attempt is being made herein to analyze Plaintiff's claims and supporting allegations. However, if Plaintiff chooses to file a first amended complaint, he is encouraged not to follow the format used in Complaints #1 and #2; rather Plaintiff should delineate the specific right he feels was violated, name each Defendant that he feels violated that right, and then delineate the action(s) of each offending Defendant that Plaintiff believes show a violation of that specific constitutional right.  It is Plaintiff's duty to correlate his claims for relief with their alleged factual basis against each named Defendant.  The Court cannot speculate as to which facts Plaintiff believes show any given constitutional violation(s).

### 2.  Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See* Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff may not sue inmate R. Harris for civil rights violations.  An inmate cannot act under color of law for an action under section 1983 to attach.  Inmate R. Harris is dismissed as a Defendant with prejudice.

Further, in Complaint #1, Plaintiff states in all but one of his causes of action that "Defendants have violated" the discussed right.  Even though his causes of action all re-allege

and incorporate by reference all previous paragraphs of Complaint #1, all allegations generally against "Defendants" are insufficient and not cognizable.  While Plaintiff named specific offending Defendants in each of his causes of action in Complaint #2, he fails to clearly identify which of his preceding factual allegations he bases his claim against each Defendant so as to give them sufficient notice and makes merely conclusory statements that, as discussed above, are insufficient.  Iqbal. at 678.

Plaintiff must clarify which Defendant(s) he feels caused violation(s) of any of his constitutional rights and the factual basis.  A complaint must put each defendant on notice of a plaintiff's claims against him or her and their alleged factual basis.  *See* Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004).

### 3.  Federal Rule of Civil Procedure 18(a)

Rule 18(a) states that "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The Court is unable to discern a specific relationship between Plaintiff's claims against the various Defendants who reside in different counties and work at different facilities.  The fact that claims are premised on the same type of constitutional violation(s) (i.e. retaliation) against multiple defendants does not make them factually related.  Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.  Claims against multiple defendants at different facilities are rarely, if ever, related.  Plaintiff is advised that if he chooses to file a first amended complaint and fails to

comply with Rule 18(a), all unrelated claims will likely be stricken.

**D.**   **Claims for Relief**

In this section, analysis of Complaint #1 and #2 is organized via the various Amendments to the United States Constitution under which Plaintiff feels his rights were violated.

**1.  First Amendment**

**a.  Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); *see also* Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action [ ] (4) did not reasonably advance a legitimate correctional goal," Rhodes v. Robinson, 408 F.3d 559, 567-69 (9th Cir. 2005), and (5) that the adverse action would "chill or silence a person of ordinary firmness from future First Amendment activities," Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation.  In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where action taken by the defendant was clearly adverse to the plaintiff.  Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Bruce v, Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

An allegation of retaliation against a prisoner's First Amendment right to file a prison

1    grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288

2    (9th Cir. 2003).  Both litigation in court and filing inmate grievances are activities protected by

3    the First Amendment and it is impermissible for prison officials to retaliate against inmates for

4    engaging in these activities.

5         "[A] plaintiff alleging retaliation for the exercise of constitutionally protected rights must

6    initially show that the protected conduct was a 'substantial' or 'motivating' factor in the

7    defendant's decision."  Soranno's Gasco, Inc. v. Morgan, 874 F.2nd 1310, 1314 (9th Cir. 1989)

8    (quoting Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  It

9    bears repeating that while Plaintiff need only allege facts sufficient to support a plausible claim

10   for relief, the mere possibility of misconduct is not sufficient, Iqbal, 129 S.Ct. at 1949-50, and

11   the Court is "not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc.,

12   572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  The conduct

13   identified by Plaintiff as retaliatory must have been motivated by his engagement in a protected

14   activity, and the conduct must not have reasonably advanced a legitimate penological goal.

15   Brodheim, 584 F.3d at 1271-72 (citations omitted).  Thus, mere allegations that Plaintiff engaged

16   in protected activity, without knowledge resulting in animus by a Defendant, is insufficient to

17   show that Plaintiff's protected activity was the motivating factor behind a Defendant's actions.

18        In Shaw v. Murphy, 532 U.S. 223 (2001), the Supreme Court reaffirmed that the four

19   factors set forth in Turner v. Safley, 482 U.S. 78 (1987), are the only factors a court is to consider

20   in determining whether a proffered legitimate penological interest is reasonably related to a

21   regulation which infringes on a prisoner's constitutional right.

22        In the fourth cause of action of Complaint #1, Plaintiff alleges that "Defendants" violated

23   his "First Amendment rights in that his confinement in the SHU constitutes retaliatory action

24   taken against Plaintiff for the exercise of his constitutionally protected right to engage in legal

25   and legitimate jailhouse lawyer activities related to and in furtherance of providing legal

26   assistance to other inmates, and/or receiving legal assistance from other inmate witnesses

27   concerning pending litigation, where such associations and jailhouse lawyer activities were not

28   for the purpose of engaging in or furthering any illegal prison gang activity whatsoever.  This

9

retaliatory action did not advance legitimate penological goals and was not tailored narrowly enough to achieve such goals." (Doc. 1, Compl., 21:14-26.)  While his fourth cause of action re-alleges and incorporates all previous paragraphs, this paragraph alleging that he was placed in the SHU in retaliation for jailhouse lawyer activities which were not related to illegal prison gang activity is insufficient to link a specific defendant to any retaliatory SHU placement and does not show that he was retaliated against for engaging in protected activities.  Thus, Plaintiff fails to state a cognizable claim for unconstitutional retaliation against any of the named Defendants in this action.

In the second cause of action of Complaint #2, Plaintiff alleges that "Defendants Gonzalez, Stainer, Holland, Bryant, J. Gutierrez, Dunlop, J. Gentry, Contreras, Tyree, Sigston, Stelfer, Turmezei, Adame, Ortiz, Franko, Steadman, Smith, Soto, Sampton, W. Gutierrez, Cantu, Harris, Webb, Powell, and Burris are the state actors who retaliated against Plaintiff by abusing the prison gang validation procedure as a ruse to punish him for reporting staff's sexual misconduct, and continuing to file grievance complaints against staff and untoward prison conditions.  Defendants adverse actions of retaliation was sufficient enough to chill the exercise of First Amendment rights, and did not reasonably advance legitimate correctional goals such as preserving safety order and discipline."  While Plaintiff named specific Defendants in this cause of action, he failed to link them to any of his factual allegations that he feels support this claim against them.  Further, this is nothing other than an insufficient statement of legal conclusions. Iqbal, 556 U.S. at 678.

### b.  Freedom of Association

"An inmate does not retain rights inconsistent with proper incarceration," and "freedom of association is among the rights least compatible with incarceration."  Overton v. Bazzetta, 539 U.S. 126, 131 (2003).  Accordingly, "[s]ome curtailment of that freedom must be expected in the prison context."  Id.  In deciding whether a regulation affecting prisoners' constitutional rights survives a constitutional challenge, four factors are relevant: "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on

guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." Id. (quoting Turner v. Safley, 482 U.S. 78, 89-91 (1987)).  Moreover, the burden is not on the State to prove the validity of prison regulation which allegedly infringe on a prisoner's associational rights, but on the prisoner to disprove it.  Id.

In the second cause of action of Complaint #1, Plaintiff alleges that Defendants violated his rights to association by confining him in the SHU based on his association with other inmates where such "association did not consist of and were [sic] not in furtherance of any illegal prison gang activity whatsoever, and Plaintiff's placement in the SHU on this basis is not reasonably related to any legitimate penological interest." (Doc. 1, Compl., 20:15-25.)  Mere placement in the SHU for reasons other than illegal prison gang activity is not cognizable.  The allegation that such placement was "not reasonably related to any legitimate penological interest" is conclusory and does not suffice to meet Plaintiff's pleading burden.  Iqbal, 556 U.S. at 678.

In the third cause of action of Complaint #1, Plaintiff alleges that Defendants "violated Plaintiff's limited First Amendment rights by promulgating, enforcing and implementing overbroad [sic] rule and/or regulations that unjustifiably curtail Plaintiff's limited constitutional rights of free association and speech.  Said rules and/or regulations forbid contact with alleged gang affiliates and inmates even though Plaintiff has no knowledge and has been given no notice of the inmates' alleged gang affiliation.  Said rules and/or regulations are not reasonably [related] to any legitimate penological interest." (Id., at 21:1-13.)  Plaintiff does not identify which rule and/or regulation he feels is over-broad so as to amount to a violation of his limited associational rights in prison.

In the fifth cause of action of Complaint #1, Plaintiff alleges that Defendants "violated Plaintiff's First Amendment and Fourteenth Amendment right to associate with members of his own racial group by promulgating, enforcing and implementing rules and/or regulations that effectively forbid prison inmates from associating with members of their own racial group.  Said rules and/or regulations forbid innocent contact with alleged prison gang affiliates.  It is established custom and policy of Defendants to validate inmates for association with members of their own racial group only (which is racial profiling)." (Id., at 22:1-14.)  Plaintiff does not

identify which rule and/or regulation he feels wrongfully forbids his association with inmates of other races.  Further, while there are claims that can be stated for racial discrimination, this Court is unaware of legal basis for claim under Section 1983 for infringing on an inmate right to associate with persons of the same race and Plaintiff identifies none.

### c. Free Speech

"In a prison context, an inmate does not retain those First Amendment rights that are 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'"  Pell v. Procunier, supra, at 822.  Prisons, it is obvious, differ in numerous respects from free society. To begin with, they are involuntarily populated by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance.  In seeking a "mutual accommodation between institutional needs and objectives (of prisons) and the provisions of the Constitution that are of general application," Wolff v. McDonnell, 418 U.S., at 556, the [Supreme] Court has repeatedly recognized the need for major restrictions on a prisoner's rights. *See, e.g.*, Id., 418 U.S., at 561-562; Lanza v. New York, 370 U.S. 139, 143 (1962).  These restrictions have applied as well where First Amendment values were implicated." Jones, 433 U.S. at 129-30 *citing* Pell v. Procunier, supra; Procunier v. Martinez, 416 U.S. 396 (1974); Meachum v. Fano, 427 U.S. 215 (1976).  A prisoner may challenge whether his speech fits within the challenged regulation in addition to challenging the regulation on its face. *See* Hargis v. Foster, 312 F.3d 404, 410 (9th Cir. 2002).

In the third cause of action of Complaint #1, Plaintiff alleges that Defendants "violated Plaintiff's limited First Amendment rights by promulgating, enforcing and implementing overbroad [sic] rule and/or regulations that unjustifiably curtail Plaintiff's limited constitutional rights of free association and speech.  Said rules and/or regulations forbid contact with alleged gang affiliates and inmates even though Plaintiff has no knowledge and has been given no notice of the inmates' alleged gang affiliation.  Said rules and/or regulations are not reasonably [related] to any legitimate penological interest." (Id., at 21:1-13.)  Plaintiff does not identify which rule and/or regulation he feels wrongfully forbids his speech.  Further, the allegation that such placement was "not reasonably related to any legitimate penological interest" is conclusory and

does not suffice to meet Plaintiff's pleading burden.  Iqbal, 556 U.S. at 678.

### d.  Jail-House Lawyer Activities

In the first cause of action of Complaint #1, Plaintiff alleges that Defendants violated his rights guaranteed by the First Amendment to the U.S. Constitution in that his confinement in the SHU is based wholly or in part upon Plaintiff's legal and legitimate jailhouse lawyer activities related to and in furtherance of providing legal assistance to other inmates, or other inmates providing legal assistance to Plaintiff, in that said jailhouse lawyer activities did not consist of and were not in furtherance of any illegal prison gang activities whatsoever, and Plaintiff's placement [in] the SHU on this basis is not reasonably related to any legitimate penological interest."  (Doc. 1, Compl., 20:1-14.)

"Inmates do not possess a special First Amendment right to provide legal assistance to fellow inmates that enhances the protections otherwise available under Turner.  For instance, some First Amendment rights are simply inconsistent with the corrections system's legitimate penological objectives and thus this Court has sustained restrictions on, e.g., inmate-to-inmate written correspondence."  Shaw v. Murphy, 532 U.S. 223 (2001) *ref.* Turner v. Safley, 482 U.S. 78 (1987) (citations and quotations omitted).

Thus, while Plaintiff may, on occasion, be able to assist his fellow inmates with their legal activities, allegations that action by prison officials that infringe on this communication does not amount to a cognizable claim for violation of Plaintiff's constitutional rights.

### 2.  Eighth Amendment

### a.  Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison

officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  *E.g.,* <u>Farmer</u> <u>v. Brennan</u>, 511 U.S. 825,847 (1994); <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, this Court has determined that placing an inmate in management status, in and of itself, does not offend the Eighth Amendment.  *See* <u>Harbridge v. Yates</u>, 2012 WL 1119452, * 4 (E.D. Cal. 2012); <u>Loeb v. Felker</u>, 2007 WL 677634 (E.D. CA 2007).

In the seventh cause of action of Complaint #1, Plaintiff alleges that Defendants violated the "Eighth and Fourteenth[1] Amendments by maliciously and sadistically placing and retaining Plaintiff in the SHU despite their knowledge that Plaintiff is not a member nor an associate of any prison gang.  Defendants have violated Plaintiff's Eighth and Fourteenth Amendment rights by their deliberate indifference to the malicious misclassification [sic] of Plaintiff."  (Doc. 1, Compl., 23:4-15.)  Also, in the eighth cause of action of Complaint #1, Plaintiff alleges that Defendants "maliciously and sadistically deprived Plaintiff of his Eighth and Fourteenth Amendment rights by denying Plaintiff his basic human need of being placed into said management cell."  (Doc. 1, Compl., 23:16-24.)  Plaintiff does not state how long he was housed under management cell conditions (<u>id.</u>, at ¶ 48), but he does state that he was forced to sleep on the cell floor for two months  (<u>id.</u>, at ¶ 49).  However, temporarily unconstitutional conditions of confinement do not rise to the level of constitutional violations.  *See* <u>Anderson v. County of</u> <u>Kern</u>, 45 F.3d 1310 (9th Cir. 1995) *ref* <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1258 (9th Cir. 1982) (*abrogated on other grounds by* <u>Sandin v. Conner</u>, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).  Thus, Plaintiff fails and is unable to state a cognizable claim for mere placement in a management cell.

**b.  Cruel and Unusual Punishment**

The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'  It is 'cruel and unusual punishment to hold convicted criminals in unsafe conditions.'  It would be odd to deny an injunction to inmates who plainly

---

[1]  It is unclear which of his rights under the Fourteenth Amendment Plaintiff feels were violated by his management cell placement.

1   proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had

2   happened to them.  The Courts of Appeals have plainly recognized that a remedy for unsafe

3   conditions need not await a tragic event. . . .  [A] prisoner need not wait until he is actually

4   assaulted before obtaining relief."  Helling v. McKinney 509 U.S. 25, 33-34 (1993) (citations

5   omitted).

6        In the sixth cause of action of Complaint #1, Plaintiff alleges that "[b]y subjecting

7   Plaintiff to a false prison gang validation and placing Plaintiff into management for two months,

8   Defendants have violated Plaintiff's Eighth and Fourteenth Amendment rights by exposing

9   Plaintiff an his family to a substantial risk of death or serious bodily injury from other people

10  who are enemies of the Crips and Black Gorilla Family.  Defendants are fully aware of the facts

11  that, Crips and Black Gorilla Family are documented enemies, and they know of this risk and are

12  deliberately indifferent to the possible consequences to Plaintiff, his family and other [sic] alike."

13  (Doc. 1, Compl., 22:15-23:2.)  Placement in management does not amount to an unsafe

14  condition.  The potential risk of injury/death from known gang enemies due to false gang

15  validation could amount to a cognizable claim if Plaintiff were to name specific Defendants and

16  show the factual basis for their knowledge that he was falsely validated as a prison gang member

17  and placed in the presence of known prison gang enemies.[2]

18       In the first cause of action of Complaint #2, Plaintiff alleges that "Defendants Gonzalez,

19  Stainer, Holland, Steadman, Bryant, J. Gutierrez, Dunlop, J. Gentry, Contreras, Tyree, Sigston,

20  Stelfer, Turmezei, Adame, Ortiz, Webb, Powell, and Burris knew that Plaintiff has the right

21  under the Eighth Amendment to [sic] Federal Constitution to be reasonably protected from the

22  constant threat of violence and sexual assault by correctional staff and he need not wait until

23  another sexual assault, or beaten [sic] happen to obtain relief from this court."  While Plaintiff

24  named specific Defendants in this cause of action, he failed to link them to any of his factual

25  allegations that he feels support this claim against them.  Further, this is nothing other than an

26  insufficient statement of legal conclusions.  Iqbal, 556 U.S. at 678.

27

28       [2] This is the claim that Plaintiff must perfect to be allowed to continue under the imminent danger exception to 28 U.S.C. 1915(g).

In the third cause of action of Complaint #2, Plaintiff alleges that "Defendants Gonzalez, Stainer, Holland, Bryant, J. Gutierrez, Dunlop, J. Gentry, Contreras, Tyree, Sigston, Turmezei, Adame, Ortiz, Steadman, Harris, Webb, Powell, and Burris violated Plaintiff's right to be free from cruel and unusual punishment guaranteed to Plaintiff by the Eighth Amendment of the United States Constitution by their actions of malicious misclassification, [sic] wrongful detention, falsifying reports, and other violations of law against Plaintiff.  As a direct and foreseeable result fo the Defendants violations of the Eight Amendment, Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm."  Again, while Plaintiff named specific Defendants in this cause of action, he failed to link them to any of his factual allegations that he feels support this claim against them.  Further, this is nothing other than an insufficient statement of legal conclusions.  Iqbal, 556 U.S. at 678.

### 3. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal protection claim may be established in two ways.   A plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.   Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); Sea River Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly

situated; and (3) there is no rational basis for the difference in treatment.  Village of

Willowbrook, 528 U.S. at 564.  If an equal protection claim is based upon the defendant's

selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement

is based upon an "impermissible motive."  Squaw Valley, 375 F.3d at 944; Freeman v. City of

Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

In the fifth cause of action of Complaint #1, Plaintiff alleges that Defendants "violated

Plaintiff's First Amendment and Fourteenth Amendment right to associate with members of his

own racial group by promulgating, enforcing and implementing rules and/or regulations that

effectively forbid prison inmates from associating with members of their own racial group.  Said

rules and/or regulations forbid innocent contact with alleged prison gang affiliates.  It is

established custom and policy of Defendants to validate inmates for association with members of

their own racial group only (which is racial profiling)."  (Id., at 22:1-14.)

Plaintiff's claims are not cognizable under the Equal Protection Clause as he fails to state

any allegations to show that he is a member of a protected class, that he was intentionally

discriminated against, that he was subjected to disparate treatment, and that there was no rational

basis for any difference in treatment he received.

### 4. Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or

meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th

Cir. 2002) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-

41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v.

Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County,

Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the

conspiracy need not know the exact details of the plan, but each participant must at least share

the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 quoting United Steel

Workers, 865 F.2d at 1541.

A claim brought for violation of section 1985(3) requires "four elements: (1) a

conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted).  A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim.  Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy.  Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  Id. at 1964-65 (internal quotations and citations omitted).

In the ninth cause of action of Complaint #1, Plaintiff alleges that "Defendants F. Gonzalez, M.D. Strainer, K. Holland, T. Steadman, M. Bryant, M. Dunlop, J. Gentry, Contreras, J. Tyree, K. Sigston, J. Franco, A. Smith, K. Soto, K. Sampton, E. Stelfer, T. Turmezei, Adame, W. Gutierrez, J. Gutierrez, A. Cantu, M. Buechner, D. Jakabosky, W. Webb, B. Powell, A. Ortiz, and inmate Harris, CDCR No. J-82216, each other, and each of them, did conspire and agree to deprive Plaintiff of his constitutional rights as alleged herein, in violation of 42 U.S.C. section 1983 and 1985." (Doc. 1, Compl., 24:1-13.)  Plaintiff's  bare, conclusory allegations that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.  See Iqbal, 556 U.S. at 678.

### 5. Supervisory Liability

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a

supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See* Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. Iqbal, 129 S.Ct. at 1949. "In a §1983 suit or a Bivens action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." Id. Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct. Id.

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." Moss, 572 F.3d at 969 (*quoting* Iqbal, 556 U.S. at 1951 (*quoting* Twombly, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." Id.

In the tenth cause of action of Complaint #1, Plaintiff alleges that "Supervisory defendants have a duty to establish policies and procedures for the administration of California Correctional Institution (CCI). Supervisory defendants have a duty to perform and execute their duties in a manner consistent with state and federal law. Supervisory Defendants have a duty to train and supervise subordinate employees. Supervisory defendants were deliberately indifferent to Plaintiff's health and safety described herein. Supervisory defendants breached their duties to

1    legally administer the prison, and to train and supervise subordinates where Plaintiff's rights

2    were violated as a result of corruption." (Doc. 1, Compl., 24:14-26.) These allegations are

3    conclusory and fail to state a cognizable claim against any Defendant(s).

4           In the fourth cause of action of Complaint #2, Plaintiff alleges that "Supervisory

5    Defendants Gonzalez, Stainer, Holland, Bryant, J. Gutierrez, Dunlop, J. Gentry, Contreras,

6    Tyree, Sigston, Ortiz, Steadman, Webb, Powell, Gentry, Franco, Smith, Soto, Sampton, Stelfer,

7    and Sampton, each of them, were either recklessly callous or indifferent to Plaintiff's

8    constitutional rights; knew about the violations and failed to act to prevent them; personally

9    involved in the violations; failed to train, supervise or control subordinates; or enacted policies

10   which were the moving force for the constitutional violation." Again, while Plaintiff named

11   specific Defendants in this cause of action, he failed to link them to any of his factual allegations

12   that he feels support this claim against them. Further, this is nothing other than an insufficient

13   statement of legal conclusions. Iqbal, 556 U.S. at 678.

14                    **6.    Due Process and Inmate Appeals**

15          The Due Process Clause protects prisoners from being deprived of liberty without due

16   process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of

17   action for deprivation of due process, a plaintiff must first establish the existence of a liberty

18   interest for which the protection is sought. "States may under certain circumstances create liberty

19   interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-

20   84 (1995). Liberty interests created by state law are generally limited to freedom from restraint

21   which "imposes atypical and significant hardship on the inmate in relation to the ordinary

22   incidents of prison life." Id.

23          "[A prison] grievance procedure is a procedural right only, it does not confer any

24   substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)

25   accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Ramirez v. Galaza, 334

26   F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement

27   to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)

28   (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855

1  F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest

2  requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez v.

3  DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

4       Actions in reviewing prisoner's administrative appeal cannot serve as the basis for

5  liability under a § 1983 action.  Buckley, 997 F.2d at 495.  The argument that anyone who knows

6  about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is

7  not correct.  "Only persons who cause or participate in the violations are responsible.  Ruling

8  against a prisoner on an administrative complaint does not cause or contribute to the violation."

9  Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005) *accord* George v. Smith, 507 F.3d 605,

10  609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters,

11  97 F.3d 987, 992-93 (7th Cir.1996).

12       Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals,

13  Plaintiff fails and is unable to state a cognizable claim against any Defendant(s) for the

14  processing and/or reviewing of his 602 inmate appeals.

15  **II.**   **CONCLUSION and ORDER**

16       For the reasons set forth above, Plaintiff's Complaint in this action is dismissed, with

17  leave to file a first amended complaint within thirty days.  If Plaintiff needs an extension of time

18  to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than

19  thirty days from the date of service of this order.

20       Plaintiff must demonstrate in any first amended complaint how the conditions

21  complained of have resulted in a deprivation of Plaintiff's constitutional rights.  *See* Ellis v.

22  Cassidy, 625 F.2d 227 (9th Cir. 1980).  The first amended complaint must allege in specific

23  terms how each named defendant is involved.  There can be no liability under section 1983

24  unless there is some affirmative link or connection between a defendant's actions and the

25  claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167

26  (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

27       Plaintiff's first amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Such a short

28  and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds

1  upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u> 550 U.S. 544, 555 (2007) *quoting* <u>Conley</u>

2  <u>v. Gibson</u>, 355 U.S. 41, 47 (1957).  Although accepted as true, the "[f]actual allegations must be

3  [sufficient] to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. 127,

4  555 (2007) (citations omitted).

5       Plaintiff is further advised that a first amended complaint supercedes the original

6  complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814

7  F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or

8  superceded pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged

9  in an original complaint which are not alleged in an amended complaint are waived." <u>King</u>, 814

10  F.2d at 567 (*citing* <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); *accord*

11  <u>Forsyth</u>, 114 F.3d at 1474.

12       The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified

13  by the Court in this order.  <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff

14  may not change the nature of this suit by adding new, unrelated claims in his first amended

15  complaint.  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

16       Based on the foregoing, it is HEREBY ORDERED that:

17       1.    Plaintiff's Complaint is dismissed, with leave to amend;

18       2.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

19       3.    Within **thirty (30) days** from the date of service of this order, Plaintiff must file a

20            first amended complaint curing the deficiencies identified by the Court in this

21            order;

22       4.    If Plaintiff fails to comply with this order, this action will be dismissed without

23            prejudice for failure to obey a court order and for failure to state a claim; and

24       5.    Plaintiff's recently filed motion for status report (Doc. 28) is rendered moot by the

25            screening of Plaintiff's Complaint and dismissal with leave to amend.

26

27  IT IS SO ORDERED.

28  **Dated:    December 18, 2012            /s/ Sandra M. Snyder**

UNITED STATES MAGISTRATE JUDGE