# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART MANAGO,<br><br>            Plaintiff,<br><br>       v.<br><br>S.F. GONZALEZ, former warden; *et al.*,<br><br>            Defendants. | Case No. 1:11-cv-01269-LJO-SMS<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CASE<br><br>(Docs. 53 and 56) |

Defendants Adame, M. Bryant, J. Gentry, J. Gutierrez, K. Sigston, T. Steadman, E. Stelfer, T. Turmezei, and J. Tyree[1] move to dismiss the complaint pursuant to F.R.Civ.P. 12(b) and 12(b)(6), contending that (1) Plaintiff failed to exhaust his administrative remedies, and (2) the complaint fails to allege facts sufficient to state a cause of action against Defendants. Doc. 53. Plaintiff disagrees, maintaining that he has exhausted all administrative remedies. Following review of the record and applicable law, the undersigned concludes that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and this case must be dismissed.

**I.     Judicial Notice**

Defendants have requested that this Court take judicial notice of:

   A. The petition for habeas corpus filed by Plaintiff in Kern County Superior Court on July 22, 2010 (No. HC011932A);

---

[1] The remaining defendants, A. Cantu and W. Gutierrez, have not yet been served in this action.

1

  B. Kern County Superior Court's September 22, 2010 order denying Plaintiff's petition for habeas corpus (No. HC011932A);
  C. Findings and recommendations in *Manago v. Cate* (No. 1:11-cv-01172-AWI-BAM), dated October 22, 2012;
  D. Order adopting Findings and Recommendations in *Manago v. Cate* (No. 1:11-cv-01172-AWI-BAM), dated November 21, 2012; and
  E. Judgment in in *Manago v. Cate* (No. 1:11-cv-01172-AWI-BAM), dated November 21, 2012.

A court may take judicial notice of a fact that is "not subject to reasonable dispute because it . . . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." F.R.Evid. 201(b). Court records in another case are sufficiently reliable for a court to take judicial notice of them. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Accordingly, the Court takes judicial notice of the cited records.

## II. Factual Background

According to allegations in the amended complaint, CDCR validated Plaintiff as a member of a street gang, the Project Watts Crips ("Crips"), when he was first imprisoned in December 1988. Validation was based on Plaintiff's self-admission, his tattoos, and his use of Crips' written symbols. The validation continued at the various institutions at which he served time in the ensuing years. Plaintiff concedes that he is a member of the Crips and maintains that membership in the Black Guerilla Family ("BGF"), a prison gang, would be both inconsistent with his Crips membership and, because of the enmity between the Crips and the BGF, impossible.

In 2003, while an inmate at CSP-Sacramento, Plaintiff reported the misconduct of a prison guard, Mary Brockett, who, among other things, sexually assaulted Plaintiff. Plaintiff's allegations were upheld, and Brockett lost her job. Thereafter, Plaintiff experienced multiple instances of retaliation by other prison guards and employees. Plaintiff responded by filing numerous grievances, law suits under 42 U.S.C. § 1983, and petitions for writs of habeas corpus.

On October 9, 2009, CDCR moved Plaintiff from CSP-Sacramento to the California Correctional Institute ("CCI") at Tehachapi. Plaintiff alleges that, when Plaintiff arrived at CCI,

Defendant Turmezei initiated a pretextual gang investigation as a means of inspecting all of Plaintiff's personal and legal property.  Prison officials confiscated as contraband certain reading materials that Plaintiff classifies as "black American history" or "black militant history," even though Plaintiff had been permitted to possess the materials in Sacramento.  Specific items confiscated included newspaper articles, a biography of George Jackson, and a Black Seeds calendar, which Turmezei characterized as BGF training materials.  On November 10, 2009, Turmezei and other gang investigators interviewed Plaintiff, who freely admitted that he had been a member of the Crips since 1975.

In or about December 2009, CCI personnel validated Plaintiff as a BGF member.  Because the Crips are a rival gang, validating Plaintiff as a BGF member exposed him to a substantial risk of violence both from BGF members, who would likely view him as an imposter, and from the Crips, who would view him as a turncoat.  Validation as a BGF member also required Plaintiff to be housed in the secure housing unit (SHU).

Finally, Plaintiff's release date was to have been June 13, 2013.  His validation as a BGF member resulted in his release date being changed to October 2016.

## III.  **Procedural History**

On or about December 27, 2009, Plaintiff initiated a staff complaint against Defendants Tyree and Turmezei, alleging that they fabricated evidence presented to the Office of Correctional Safety (OCS) in its re-evaluation of Plaintiff's validation, and against Defendants Adame and Turmezei alleging that they would distort evidence and lie to advance their careers as investigators.  A March 8, 2010 memorandum reported that, at the first level, the appeal was partially granted, the alleged staff misconduct was investigated, and the investigation revealed no staff misconduct.

At the second administrative level, Plaintiff requested an internal affairs investigation, copies of all investigative reports, and $3 million in damages.  The written decision at this level

carefully examined each of Plaintiff's allegations against several CDCR staff and found no misconduct. It noted that the eight source items used in Plaintiff's validation were appropriately discovered and documented, and that the process by which staff members investigated Plaintiff's association with the BGF complied with the regulations set forth in CCR, Title 15, Section 3378, *Documentation of Critical Case Information*.

Finally, the appeal was denied at the Director's level in a written decision noting that a confidential inquiry supported the determinations below.

On July 22, 2010, Plaintiff filed a petition for a writ of habeas corpus in Kern County Superior Court (No. HC011932A), in which he alleged that he had wrongly been validated as a BGF member in retaliation for his actions against corrupt prison employees. Explaining that Plaintiff's administrative appeals only alleged staff misconduct, the Court rejected Plaintiff's petition on September 22, 2010, based on Plaintiff's failure to exhaust his administrative remedies with regard to the claim set forth in the habeas petition. But even if Plaintiff had exhausted administrative remedies, said the Court, the administrative record indicated that Plaintiff's validation as a BGF member was supported by more than the three independent sources of evidence required to prove gang membership under Cal.Code.Regs. § 3378(c)(3)-(4).

On November 30, 2010, without stating reasons or citing authority, the California Court of Appeal, Fifth Appellate District, denied Plaintiff's appeal of the Superior Court's denial of his petition for a writ of habeas corpus. On June 29, 2011, again without stating reasons or citing authority, the California Supreme Court also denied Plaintiff's appeal of the denial of the habeas petition.

On July 15, 2011, Plaintiff petitioned for a writ of habeas corpus in this Court. *Manago v. Cate* (1:11-cv-01172-AWI-BAM-HC). The Court dismissed the petition on November 20, 2012,

4

concluding that Plaintiff's claims were procedurally defaulted because of his failure to exhaust his state administrative remedies as required by California Law.

On August 1, 2011, Plaintiff filed this case, seeking damages and expungement of his validation as a BGF associate.

## IV.   Discussion

Following screening, this case concerns two issues: (1) whether Defendants Turmezei, Adame, Sigston, Steadman, Bryant, Stelfer, W. Gutierrez, and A. Cantu violated Plaintiff's First Amendment right by validating Plaintiff as a BGF member in retaliation for Plaintiff's filing of grievance complaints against staff and untoward prison conditions, and (2) whether Defendants J. Gutierrez, Gentry, Tyree, Turmezei, and Adame were deliberately indifferent to Plaintiff's Eight Amendment right to safety by falsely validating him as a BGF member.  Docs. 42 and 47.  Plaintiff seeks monetary damages and expungement of his false validation as a member of the BGF.  Doc. 42.  Because expungement of the BGF gang validation would necessarily change the duration of Plaintiff's imprisonment, his claims are not cognizable in a civil rights suit under 42 U.S.C. § 1983.

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).   "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from the imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 489-90.

In *Preiser*, the petitioners lost good-time credits as a result of disciplinary action. *Id.* at 476. The Court held that even if restoring the revoked credits would not have resulted in the petitioners' immediate release, restoration would have reduced the length of their confinement.  Accordingly, the only appropriate remedy was a writ of habeas corpus. *Id.* at 487.  Here, disciplinary action, in

5

the form of gang validation, has increased Plaintiff's term of imprisonment, delaying his anticipated release date from June 2013 to October 2016. Granting Plaintiff's request for relief would necessarily shorten the term of his imprisonment and result in his immediate release.

Acknowledging that § 1983's broad scope appears to encompass prisoner claims intended to secure release or to reduce a sentence, the *Preiser* Court found that the federal habeas corpus statute was "explicitly and historically designed to provide a means for a state prisoner to attack the validity of his confinement." *Id.* at 489. Because Congress clearly and specifically required exhaustion of state remedies as a condition precedent to invoking the federal habeas corpus law (28 U.S.C. § 2254), redress under § 1983, no matter how applicable § 1983 might appear if applied literally, is precluded because Congress enacted a more specific act directly addressing actions seeking to challenge the fact or duration of a term of imprisonment. *Id.* Since the habeas corpus law requires a prisoner to first exhaust his or her state remedies, allowing a plaintiff to avoid exhaustion simply by filing his action under § 1983 instead of the federal habeas corpus law would impermissibly frustrate congressional intent. *Id*. at 489-90.

To bring an action under 28 U.S.C. § 2254, a petitioner seeking habeas corpus relief must first exhaust his or her state remedies. *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Preiser*, 411 U.S. at 489. Requiring exhaustion acknowledges the states' substantial interest in administering their own prisons and correcting any errors arising in them. *Preiser*, 411 U.S. at 491-92. "The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." *Id.* at 492.

In contrast, a prisoner bringing an action under 42 U.S.C. § 1983 need not first bring a state action. *Ellis v. Dyson*, 421 U.S. 426, 432-33 (1975). Permitting a § 1983 plaintiff to challenge the length of his or her sentence or to seek release from imprisonment could defeat the exhaustion

6

requirement, offending the principles of federal-state comity implicit in the requirement. *Young v. Kenny*, 907 F.2d 874, 876 (9th Cir. 1989), *cert. denied sub nom. Bressman v. Farrier*, 498 U.S. 1126 (1991).

In *Heck*, the Supreme Court resolved the apparent conflict, holding:

> We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by a grant of a writ of habeas corpus.

512 U.S. at 486-87.

Similarly, if a prison disciplinary action "'arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'" *Cunningham v. Gates*, 312 F.3d 1148, 1153 (9th Cir. 2002), *cert. denied,* 538 U.S. 960 (2003), *quoting Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). "Under *Heck v. Humphrey* [512 U.S. 477 (1994)], a state prisoner cannot recover damages in a § 1983 suit if a judgment in favor of the plaintiff 'would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006). A prisoner's claims for money damages and declaratory relief, arising from a prison disciplinary hearing in which the prisoner alleged that state officials had acted with deceit and bias, was not a cognizable § 1983 action since a decision in the prisoner's favor would necessarily invalidate the revocation of the good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997).

7

*Heck* bars Plaintiff's § 1983 claims and requires the Court to dismiss Plaintiff's § 1983 action. Accordingly, the Court need not address whether or not Plaintiff exhausted his administrative remedies.

**V.     Conclusion and Recommendation**

Because Plaintiff seeks remedies including a reduction of his term of imprisonment, the complaint fails to state a cause of action and is barred by *Heck*. As a result, the undersigned must recommend that this case be dismissed.

These findings and recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, either party may file written objections with the court, serving a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 6, 2013**            **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE